ESTATE OF FREDERICK ZEILE, DECEASED.

[No. 3370; May 14, 1886.]

Annuity—Protection of Residuary Legatees.—When a testator gives his brother a specified sum per annum, to be paid during his lifetime from the interest of money to be invested by the executors, and directs the principal sum and the overplus interest to be paid to the residuary legatees when the annuity ceases, the investment of the fund should be made with due regard to the interests of such legatees.

Annuity—Investment of Fund.—When a testator bequeaths to his brother a specified sum per annum for life, payable quarterly, the principal sum and the overplus interest thereon to be divided among the residuary legatees when the annuity ceases, the court, in order to provide for the required income, will direct the retention of city real property belonging to the estate and yielding an income slightly in excess of the annuity, rather than direct an investment in United States bonds.

Annuity—Interest and Income.—Where a testator directs his executors to place funds "at interest" to provide for the payment of an annuity, the investment may nevertheless be made in real estate, if such a course seems preferable to the loaning of money.

Interest on Money.—Interest is Only a Synonym for specific income.

COFFEY, J. Decedent bequeathed to his brother $1800 per annum, in quarterly payments, during his life, and directed his executors to place a sufficient sum of money at

interest, well secured, to pay said annuity, and provided, further, that when the annuity shall cease, the capital amount, and any overplus of interest, shall be divided among his residuary legatees. Held:

1. That means should be employed to carry into effect the intent of the testator, to provide an income for his brother during his life, with as little detriment as possible, to the residuary legatees.

2. That although the language of the will is that money should be placed at interest, yet interest is only a synonym for specific income, and the object and intent of the testator was to produce income, and if this can be done better by setting aside property of the estate, or purchasing land, than by lending money, that it would be a narrow and technical construction to refuse to permit it.

3. That it constitutes no objection that property set aside or purchased produces an income a little in excess of the requirements of the annuity, and that this possibility was contemplated by the testator, in providing that the overplus of interest, if any, shall go to his residuary legatee.

4. That in this case, an investment which will bring interest, payable only semi-annually, is objectionable, even if acceptable to the annuitant, as it would involve the payment of interest on the deferred payments of the annuity, and would thus be unjust to the residuary legatees.

5. That United States bonds would be objectionable as an investment to secure the payment of such annuity, in view of the high premium which they command, which would seriously diminish the value of the residuary estate to be distributed within the lifetime of the legatees, and, further, in view of their liability of being called in by the government, prior to the determination of the life estate which would efface the value of the premium, and leave a diminished fund for reinvestment.

Frederick Zeile, died at Monte Carlo, principality of Monaco, in Europe, on April 20, 1884, being at the time of his death a resident of San Francisco, California, and leaving estate therein.

Decedent left a last will, executed in San Francisco, on May 19, 1883, which was admitted to probate on November 19, 1884, and on December 1, 1884, letters testamentary were issued to E. H. Taft, William Sharon and O. Livermore, the executors therein named.

The further facts appear in the opinion.

S. Heydenfeldt, for the executors.

J. B. Reinstein, Wm. Loewy, J. P. Kelly, Selden S. and George T. Wright and Sawyer & Burnett, for the various legatees.

Several of the legatees under the will of the testator, Frederick Zeile, filed their petitions for a partial distribution, and an order was made on the 27th April, ultimo, in favor of most of the petitioners.

Among the number of petitioners was Robert Zeile, who, in the above-mentioned order, was granted a distribution of what was due to him under the will, up to the date of the order.

The further claim of Robert Zeile to have a secure investment of a sufficient sum of money to produce him an annual income of $1800 per annum, payable in quarterly installments, was brought to the notice of the court, by the answer of the executors, and the instruction and order of the court was prayed for in respect thereto.

The question thus raised and submitted has been held under advisement and carefully considered up to the present time.

The clause of the testator's will which provides the bequest is as follows, viz.:

"Item 7th. I give and grant to my brother, Robert, eighteen hundred dollars per annum, in quarterly payments during his life; and it is my will, that my executors place a sufficient sum of money at interest, well secured, to pay the said annuity promptly; and when the said annuity shall cease to become due, it is my will that the said sum of money, with the overplus of interest thereon, if any there be, shall be divided among my residuary legatees, as hereinafter named, or their heirs."

It is suggested in the answer of the executors that as the estate is the owner of a large amount of bonds of the Southern Pacific Railroad Company, the retention by them of a given number of the bonds, as trustees of the annuity fund, would be a sufficiently secure investment, and he suggested a preference for United States bonds.

While yielding to the objection of the legatee, as possibly well founded, I find serious objection to an investment in United States bonds.

One objection which is common to all marketable bonds rests in the fact that the interest is payable on such bonds semi-annually, while the annuity to Robert Zeile is payable quarterly. Even if this were acceptable to him, it would involve the payment of interest upon the deferred payments, which would be unjust to the residuary legatees, and therefore illegal, unless entirely unavoidable.

The special objections to United States bonds are: First, the high premium which they command, which would seriously diminish the value of the residuary estate to be distributed within the lifetime of the present legatees. Second, their liability of being called in by the government for payment, prior to the termination of the life estate, which would not only efface the value of the premium, but would leave a diminished fund in the hands of the trustees, for reinvestment, and possibly at a time when the chances for investment may be more difficult than at present.

These reasons, in my opinion, exclude both of the suggestions for an investment in bonds.

In examining the assets of the estate, I find a piece of real estate in this city, on Jackson street.

The evidence shows that this property produces an income a little in excess of the requirements of the annuity, including taxes, commissions for collecting rents, and other expenses of the trust; and it occurs to me that the retention of this property, or rather its transmission from the executors, as executors, to the same hands as trustees, would be ample security, and would be most apt to carry into effect the intention of the testator, in providing an income for the sup-

port of his brother, during life, with as little detriment as possible to the residuary legatees.

It can be no objection that the language of the will directs money to be placed at interest. Interest is only a synonym for specific income, and the object and intent of the testator was to produce income. If this can be done better by a purchase of land than by lending money, it would be a narrow, technical and unreasonable view to deny it. Nor should it be objected that the income is a little in excess of the amount apparently required. This is liable to happen with any investment, and was contemplated by the testator when he provided that at the cessation of the annuity the sum invested "with the overplus of interest thereon" shall go to his residuary legatees. He knew it was not a case for absolute exactness.

I am the more satisfied with the conclusion I have reached, from the fact that while any loan of money can at the best only return the money at the death of Robert Zeile, the land, in a large and growing city, will, as far as human judgment can estimate, continue to improve in value, so that at the end of the life term the claimants of the remainder will be compensated for the delay.

It may also be considered that the trustees and the trust estate will always be subject to the control of the court, with full power to direct a change of the investment, whenever it can be shown to be to the mutual advantage of all the parties in interest.

It is therefore ordered and decreed that O. Livermore and E. H. Taft, as serving executors of the will of Frederick Zeile deceased, be divested as executors of the tract of land in the city and county of San Francisco, described in the foregoing opinion, and that the same be distributed to, and invested in them, as trustees, to carry out the provision of the seventh item of the last will of the testator.

This order of distribution is rendered, however, upon the condition that the court reserves the power hereafter to direct a change of the investment whenever it shall appear to be for the interest of all the parties concerned.